IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILLARD J. NEELY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1344-D (BH) |
| | § | |
| KIRAN KHURANA, et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**

Pursuant to 28 U.S.C. § 636(b) and the District Court's orders of reference, filed December 15, 2008, and January 21, 2009, Defendants' dispositive motions were referred to the United States Magistrate Judge for hearing, if necessary, and for proposed findings and recommendation. Also referred were all procedural motions that relate to resolution of the dispositive motions. Before the Court are the following:

(1) *Motion of Defendants Kiran Khurana and Parkland Hospital to Dismiss and Brief in Support Thereof*, filed December 3, 2008 (docket #56);

(2) Plaintiff's motion to quash, filed January 6, 2009 (docket #65);

(3) *Defendants' Motion for Summary Judgment*, filed January 21, 2009 (docket #70);

(4) Plaintiff's *Request for extension of time to answer the defendants* [sic] *motions for summary judgment*, filed February 10, 2009 (docket #80);

(5) *Plaintiff's Request for Interrogatories*, filed February 24, 2009 (docket #93); and

(6) Plaintiff's *Motion for a Hearing*, filed March 10, 2009 (docket #95).

Based on the pertinent filings and applicable law, the Court finds that the motion for summary judgment (doc. 21) should be **GRANTED**. The remaining motions should be **DENIED**.

- 1 -

# I. BACKGROUND

## A. Undisputed Facts

At the time of the events relevant to this action, Plaintiff Millard Neely ("Plaintiff") was held as a pre-trial detainee in the Lew Sterrett unit of the Dallas County Jail (the "Jail"). He is currently incarcerated in the Hamilton Unit of the Texas Department of Criminal Justice in Bryan, Texas.

On or about Thursday, March 29, 2007, Plaintiff nicked himself while shaving with a razor distributed by Jail staff. (Docket #86, at 2). He then proceeded to take a shower and stopped the bleeding while in the shower. *Id*. Shortly thereafter, he avers that his neck began to itch and swell. *Id*. During a regularly scheduled, twice daily medical check that afternoon to monitor his diabetes, Plaintiff avers that he requested to see a doctor about his razor wound.[1] *Id*. The next medical record from that time period is dated Wednesday, April 4. (Docket #72 (hereinafter "MSJ App."), at 32). On that day, the medical record shows that Plaintiff complained of nausea, chills, and loss of appetite. *Id*. The medical record also shows that Jail staff scheduled Plaintiff to see a medical doctor the next day for further evaluation. *Id*.

The next day, Thursday, April 5, 2007, Defendant Dr. Kiran Khurana, M.D. ("Defendant Khurana") examined Plaintiff. (MSJ App. at 33). Defendant Khurana diagnosed Plaintiff with an upper respiratory viral infection and prescribed ibuprofen, Benadryl, and Robitussin DM to treat the symptoms. (MSJ App. at 33, 161, 459). She also diagnosed him with an abscess on the front of his neck and prescribed a double strength dose of Bactrim, an antibiotic that treats a wide variety of bacterial infections and is also one of the most effective for treating methicillin resistant staphylococcus aureus (MRSA) (the most common microorganism associated with skin and soft

---

[1] Plaintiff is diabetic and his blood sugars are checked twice a day by Jail clinic staff. (Docket #82, at 2; MSJ App. at 457-58; *see* MSJ App. at 173-454).

tissue infections in the Jail). *Id*.

Four days later, Plaintiff contends he noticed that the prescribed medications were not working and that the abscess had increased in size. (Docket #86, at 3). At a clinical appointment on April 16, 2007, the Jail nurse observed that the abscess had hardened and that there was no drainage as expected. (MSJ App. at 34). The Jail nurse scheduled Plaintiff to see a doctor later that day. *Id*. Five hours later, Defendant Khurana examined Plaintiff and noted that the neck abscess was worse and had not adequately responded to the prescribed antibiotic therapy. (MSJ App. at 35, 460). She determined that he needed to go to Parkland Memorial Hospital ("Parkland") for incision and drainage with wound cultures to identify the microorganism and for administration of intravenous antibiotics. *Id*.

From April 16 - 24, 2007, Plaintiff received treatment at Parkland. (*See* MSJ App. at 38-45). As part of his treatment, Plaintiff avers that the treating physician made incisions in his neck without anesthetic and administered twice daily shots to his stomach. (Docket #82, at 2). Cell cultures from Parkland confirmed that the infecting organism was MRSA, and the treating physician prescribed a series of antibiotics to combat the infection. (MSJ App. at 461-62; *see* MSJ App. at 38-45). Upon Plaintiff's return to the Jail on April 25, he received ten days of post-hospitalization care for his neck incision and drainage wound. (*Id*. at 46-47, 52, 49, 55-61, 63-64, 66-68).

Defendant Khurana next examined Plaintiff on April 26, 2007. (*Id*. at 50). She reviewed the hospitalization records and discharge instructions to ensure that Plaintiff received the appropriate care. (*Id*. at 461). Of the four medications prescribed by the Parkland physician, Defendant Khurana renewed two and made two substitutions, one for a more powerful antibiotic more appropriate to the Jail setting and one for a comparable heart medication because the original

medication was not available from the Jail pharmacy. (*Id*. at 50, 462). At Plaintiff's next visit with Defendant Khurana on May 14, 2007, she noted that the neck abscess had healed and that he was doing well. (*Id*. at 72, 462). Plaintiff voiced no complaints related to his neck abscess at either of his final two examinations by Defendant Khurana prior to his transfer to the TDCJ Hamilton Unit. (*See id*. at 88, 109).

On August 2, 2007, Plaintiff filed this civil rights action *pro se* under 42 U.S.C. § 1983 against Defendant Khurana and Defendant Parkland (collectively, "Defendants").[2] (Docket #1). His complaint alleges that Defendant Khurana incorrectly diagnosed his neck abscess and that Defendant Parkland failed to monitor or supervise Defendant Khurana. (*Id*. at 4). To clarify his claims, this Court propounded a Magistrate Judge's Questionnaire ("MJQ") on November 30, 2007. (Docket #15). In his answers, Plaintiff asserted that Defendant Khurana failed in her duty to properly treat his neck abscess because she prescribed the incorrect dosage and amount of antibiotics. (Docket #16, at 1). He further alleges that Defendant Khurana acted negligently, but on the next page of his answers he alleges that she acted with deliberate indifference. (*Id*. at 3-4).

**B.    Procedural History**

On April 14, 2008, the court issued a scheduling order setting a discovery deadline of January 1, 2009, and motions deadline of February 1, 2009. On December 3, 2008, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Docket #56). After Plaintiff filed his response on January 6, 2009, (Docket #65), Defendants also filed a motion for summary judgment on January 21, 2009. (Docket #70,

---

[2] Plaintiff also named the Jail in his original complaint. (Docket #1). In response to a Magistrate Judge's Questionnaire issued on November 5, 2007, Plaintiff amended his complaint to proceed only against Defendant Khurana and Defendant Parkland. (Docket #14, at 1).

hereinafter "MSJ"). Plaintiff filed responses to the motion for summary judgment with affidavits in support on February 4 and on February 10, 2009.[3] (Docket ##81, 82, 84, 85, 86). Plaintiff also filed various motions Defendants filed their reply and objections to Plaintiff's evidence on February 17, 2009.[4] (Docket #92). The issues are now ripe for review.

## II. PLAINTIFF'S MOTIONS

The Court first considers the motions filed by Plaintiff that relate to Defendants' motion to dismiss and motion for summary judgment.

**A.     Motion to Quash**

As part of his response to Defendants' motion to dismiss, filed on January 6, 2009, Plaintiff pleads in the alternative to quash the Rule 12(b)(6) motion. (*See* docket #65). Plaintiff provides no basis for quashing the Rule 12(b)(6) motion, and his motion to quash should therefore be **DENIED**.

**B.     Request for Extension of Time**

On February 10, 2009, Plaintiff filed a request for a 45-day extension to respond to Defendants' motion for summary judgment. (Docket #80). In his motion, Plaintiff contends that he is unable to effectively respond to Defendants' motion for summary judgment because he has not conducted discovery. (*Id.* at 1). He also contends that the prison law library at his current place of incarceration is inadequate. *See id.*

Pursuant to Federal Rule of Civil Procedure 56(f), "[i]f a party opposing the motion [for

---

[3]  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

[4]  On March 10, 2009, Plaintiff filed a sur-reply to Defendants' motion for summary judgment. (Docket #96). Local Rule 7.1 provides for a motion, a response, and a reply. The local rules do not allow surreplies as a matter of course. *Underwood v. East Texas State Univ.*, No. 3:96-CV-2739-G, 1998 WL 223695, *1 (N.D. Tex. Apr. 28, 1998). Since Plaintiff did not seek leave to file his surreply, it will not be considered. *See id.* Even if considered, however, it would not affect the Court's rulings.

summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may...order a continuance to enable affidavits to obtained, depositions to be taken, or other discovery to be undertaken." Fed. R. Civ. P. 56(f)(2). In order to obtain a continuance under Rule 56(f), the non-movant must: (1) request extended discovery prior to the court's ruling on summary judgment; (2) notify the trial court that further discovery pertaining to summary judgment is being sought; and (3) demonstrate specifically how the requested discovery pertains to the pending motion. *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). Vague assertions that discovery will produce needed but unspecified facts are insufficient to obtain a Rule 56(f) continuance. *Washington v. Allstate Ins. Co.*, 9901 F.2d 1281, 1285 (5th Cir. 1990).

Plaintiff's motion satisfies the first requirement in that was made prior to a ruling on summary judgment. In his unsworn two-page motion, he makes no allegation or averment that he currently seeks any discovery, stating that he has not requested any disclosures, interrogatories, or admissions. (Docket #80, at 1).[5] Plaintiff also fails to explain specifically how additional discovery pertains to the pending motion. *See id.* His sole justification for seeking a continuance is that the prison law library at the Hamilton Unit allegedly is inadequate, but he fails to explain why this inadequacy has hindered him in obtaining discovery or responding to Defendants' motion. Moreover, Plaintiff subsequently, and timely, filed two responses to the motion. (Docket ## 81-82, 84-86).

Plaintiff failed to meet his burden to show that a continuance is necessary to respond to

---

[5]On February 24, 2009, Plaintiff filed a request for interrogatories. (Docket #93.) Even liberally construing the discovery request as a basis for his motion for extension of time, Plaintiff still has not met his burden under Rule 56(f).

Defendants' motion for summary judgment. *Wichita Falls*, 978 F.2d at 919. Accordingly, his Rule 56(f) motion should be **DENIED**.

C. **Motion for Interrogatories**

On February 24, 2009, Plaintiff filed a request for interrogatories. (Docket #93). In his motion, he requests the Court to provide him with "all information that may lead to the discovery of admissible evidence," "a list of all non-party statements," and all "discoverable information about all fact witnesses." (*Id*. at 3). He also submits a list of twenty questions and the names of thirty people from whom he seeks the answers to these questions. (*Id*. at 5-7).

*Pro se* plaintiffs are responsible for proceeding with discovery in accordance with the Federal Rules of Civil Procedure. *Connor v. Louisiana Dept. Of Health and Hospitals*, No. 02-284-RET-DLD, 2008 WL 4372030, *2 (M.D. La. Sept. 24, 2008). Plaintiff does not need a court order to conduct discovery in accordance with the discovery rules. *Polonczyk v. City of Fort Worth*, No. 4:03-CV-43-Y, 2003 WL 21353923 (N.D. Tex. June 6, 2003). Rule 33(a) provides that interrogatories should be served directly to the opposing party. *See* Fed. R. Civ. P. 33(a). Plaintiff's motion should be **DENIED**.

D. **Motion for Hearing to Reopen Discovery**

On March 10, 2009, Plaintiff submitted a motion for a hearing to reopen the discovery period. (Docket #95). Pursuant to the local rules, oral argument on a motion will not be held unless otherwise directed by the presiding judge. L.R. 7.1(g). Neither the District Judge's scheduling order nor any order by this Court provides for oral argument on a motion, and the motion for hearing is **DENIED**. The Court considers the merits of Plaintiff's motion on the written filing alone.

Pursuant to the District Court's scheduling order, the period for discovery ended on January

1, 2009. (Docket #42, at 2). The scheduling order also required motions not otherwise covered by the order, such as Plaintiff's request to reopen discovery, to be submitted no later than February 1, 2009. (*Id*. at 3). Since Plaintiff submitted his motion to reopen discovery on March 10, 2009, it is untimely.

Federal Rule of Civil Procedure 16(b)(4) governs a party's request to extend the discovery period after the deadline established by a scheduling order has passed. *Cartier v. Egana of Switzerland (America) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent. *Id*. To meet the good cause standard, the party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *Id*. (citing *S&W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003)). In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation; (2) the importance of the requested relief; (3) potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice. *See S & W Enters.*, 315 F.3d at 536.

Plaintiff's explanation for not completing discovery within the time specified by the scheduling order is that he did not have access to a well-equipped law library. (Docket #95, at 2). This does not explain why he was unable to mail requests for disclosures or interrogatories to opposing counsel. Plaintiff contends that additional time is necessary for discovery so that he can respond to Defendants' motion for summary judgment, *id*., but he filed a timely response to the motion for summary judgment with supporting affidavits. Defendants would be prejudiced if the Court were to extend the discovery period because the case has been pending for 18 months and is at an advanced stage of the proceedings. Additionally, Defendants were served with process more

than one year ago, (*see* docket #25, 31), and Plaintiff had all that time in which to conduct discovery. Finally, the District Court set trial for June 1, 2009, which is in less than three months time. A continuance is therefore very unlikely. Considering these four factors together, the Court finds that Plaintiff has not met his burden to establish good cause for why the discovery period should be extended. His motion should therefore be **DENIED**.

### III. EVIDENTIARY OBJECTIONS

Defendants raise several objections to statements contained within Plaintiff's two affidavits filed in response to the motion for summary judgment. (Docket #92). Specifically, they object to Plaintiff's statements of opinion concerning (1) Defendant Khurana's medical diagnosis and treatment of Plaintiff's health care needs and (2) alleged deliberate indifference by Defendants. (*Id*. at 3-5).

The Federal Rules of Evidence limit the testimony of lay witnesses to opinions or inferences which are (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The rules of evidence also provide that a witness qualified as an expert may testify to scientific, technical, or other specialized knowledge if the testimony is based upon sufficient facts or data, is the product of reliable principles and methods, and if the witness has applied the principles and methods reliably to the case. Fed. R. Evid. 702.

In this case, Plaintiff is not a physician and has not established any credentials that would enable him to express expert opinions on issues of medical practice and standards of care or of medical causation. Nor is he qualified to offer legal opinions about what constitutes deliberate

indifference, a determination that is made by the Court. To the extent that his affidavits proffer inadmissible expert testimony, they will not be considered by the Court. Accordingly, Defendants' objections are **SUSTAINED** and their motion to strike is **GRANTED**.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent,

*id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## V.  42 U.S.C. § 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the

laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).

A. **Conditions of Confinement**

A prisoner's treatment and his conditions of confinement are subject to scrutiny under the Eighth Amendment to the Constitution of the United States, which proscribes cruel and unusual punishments.[6] *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment requires that conditions of confinement be humane, and prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care as well as take reasonable measures to guarantee their safety. *Id.* A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement absent a showing of "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* at 828, 834. To establish deliberate indifference, an inmate must show that the prison official (1) was "aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See also Farmer*, 511 U.S. at 837 (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety). Deliberate indifference "describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with

---

[6] A pre-trial detainee's treatment and his conditions of confinement flow from the substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Fifth Circuit recognizes, however, that "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). As a result, the Fifth Circuit applies "the same standard for assessing the constitutional claims of both pretrial detainees and state inmates" under the Eighth Amendment. *Id.*

knowledge that harm will result." *Id*. at 835. Deliberate indifference is "an extremely high standard to meet," *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

An inmate may demonstrate deliberate indifference to his medical needs by showing that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs," *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985), such as delaying access to medical care and interfering with treatment once prescribed. *Estelle*, 429 U.S. at 105. *See e.g. Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). An incorrect diagnosis by prison medical personnel does not suffice to state a constitutional violation, however. *See id*. Likewise, the failure to alleviate a significant risk that the official should have perceived, but did not, also does not constitute a violation. *Farmer*, 511 U.S. at 838. Mere negligence or medical malpractice does not rise to the level of a constitutional violation, *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), nor does disagreement with a prescribed course of treatment. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing cases).

**B.** **<u>Defendant Khurana</u>**

Defendant Khurana moves for summary judgment on the grounds that Plaintiff cannot show she was deliberately indifferent to Plaintiff's serious medical needs. (MSJ Br. at 6). In support of her motion, she raises two main arguments. First, she contends that the voluminous medical records show that Plaintiff received ample and appropriate medical care. *Id*. Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate

indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Plaintiff's medical records show that he received twice daily care from Jail medical staff. (*See* MSJ App. at 7-454). The medical records also show that Defendant Khurana personally attended to Plaintiff on two occasions to treat his neck abscess; she is also the doctor who determined that he needed more advanced care at Parkland and ensured he received the proper follow-up care upon his return to the Jail. (*Id*. at 33-35, 50, 72, 161, 459-62). Second, Defendant Khurana contends that Plaintiff himself admitted that she examined him, diagnosed his neck abscess, and prescribed antibiotic therapy. (MSJ Br. at 6-7). Plaintiff's complaint states that Defendant Khurana examined his neck abscess (docket #1, at 4), and his responses to the second MJQ also state that she examined him and prescribed antibiotics. (Docket #16, at 1, 3-4).

Plaintiff's disagreements with Dr. Khurana's diagnosis and prescribed course of treatment do not rise to the level of a constitutional violation. *Gobert*, 463 F.3d at 346. Based on these arguments, Defendant Khurana met her initial burden to show that Plaintiff cannot establish a violation of the Eighth Amendment because she did not exhibit deliberate indifference to his serious medical needs. *See Keeley v. Cisco Sys.*, 2003 WL 21919771, *3 (N.D. Tex. Aug.8, 2003) (Fitzwater, J.) (a defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support a required element of a plaintiff's case).

The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record sufficient to establish a genuine issue of material fact that Defendant Khurana was deliberately indifferent to his medical needs. *Celotex*, 477 U.S. at 324. Plaintiff contends that Defendant Khurana exhibited deliberate indifference because approximately one week elapsed from when he nicked himself with a razor (on March 29, 2007) and when Defendant Khurana first examined him

for this complaint (on April 5). (*See* docket #86, at 3). Even construing Plaintiff's allegations in the light most favorable to him, he fails to present any competent summary judgment evidence to show that Defendant Khurana was the person responsible for the alleged one-week delay. In addition to being unable to show that Defendant Khurana delayed access to his medical care, Plaintiff states in his supporting affidavits that Defendant Khurana improperly diagnosed his condition, prescribed the wrong dosage of antibiotics, and provided negligent medical treatment. (Docket #82, at 2; docket #86, at 3). It is well-established that an incorrect diagnosis by prison medical personnel does not suffice to state a constitutional violation. *Estelle*, 429 U.S. at 105. It is also well-established that mere negligence or medical malpractice does not rise to the level of a constitutional violation, nor does disagreement with a prescribed course of treatment. *Domino*, 239 F.3d at 756; *Gobert*, 463 F.3d at 346.

Plaintiff has therefore failed to meet his burden to identify evidence in the record to show that Defendant Khurana was deliberately indifferent to his serious medical needs. Since he cannot show he suffered an Eighth Amendment violation, his claim is not actionable under 42 U.S.C. § 1983. *Farmer*, 511 U.S. at 834 (liability under the Eighth Amendment requires a showing of deliberate indifference); *Flagg Bros.*, 436 U.S. at 155 (claim under § 1983 requires a constitutional deprivation). Accordingly, Defendant Khurana's motion for summary judgment should be **GRANTED** and Plaintiff's claims against her should be **DISMISSED** with **PREJUDICE**. Since Plaintiff's claim against Defendant Khurana is not actionable under § 1983, the Court does reach her assertion of the defense of qualified immunity. (*See* MSJ Br. at 2-4).

C. **Defendant Parkland**

The Court next considers Defendant Parkland's grounds for summary judgment. Where, as

here, an inmate seeks to hold a governmental entity liable for civil rights violations under 42 U.S.C. § 1983,[7] he must show that the unconstitutional actions of jail officials resulted from a official policy or practice. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694 (1978); *see also Green v. Dallas Co. Jail*, 2003 WL 21418965 at *3-4 (N.D. Tex. Apr. 29, 2003) (applying Monell to civil rights claim against Parkland Hospital); *Kinzie v. Dallas Co. Hospital Dist.*, 239 F.Supp.2d 618, 624 (N.D. Tex. 2003) (same). This may include persistent or widespread practices which, although not officially authorized, are "so common and well settled as to constitute a custom that fairly represents [official] policy." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995). Isolated incidents, however, are insufficient to show a custom or practice for purposes of § 1983 liability. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.). A governmental entity cannot be held liable on a *respondeat superior* theory. *Monell*, 436 U.S. at 691.

Defendant Parkland moves for summary judgment on the grounds that it cannot be held liable for Plaintiff's claims under 42 U.S.C. § 1983 on a *respondeat superior* theory. (MSJ Br. at 8). In support of this assertion, it points to Plaintiff's response to the MJQ, in which he asserted that it "is responsible for his injuries because Dr. Khurana is an employee" of Parkland Hospital. (Docket #16, at 2). Defendant Parkland also points to the absence of any allegation by Plaintiff of a widespread policy or practice to deny Plaintiff of his constitutional rights. Based on these arguments, Defendant Parkland met its initial burden to show that it cannot be held liable for Plaintiff's § 1983 claim.

The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record sufficient to establish a genuine issue of material fact that Defendant Parkland can be held liable for

---

[7] Parkland Hospital System is a political subdivision of the State of Texas. *See* Tex. Health & Safety Code Ann. § 281.001, et seq. (Vernon 2001).

his § 1983 claim. *Celotex*, 477 U.S. at 324. Neither of Plaintiff's two sworn affidavits provide any information about an official policy or practice by Defendant Parkland to deprive inmates of their constitutional rights. (*See* dockets #82, 86). The only time he addresses Defendant Parkland's alleged involvement is in a brief in support of his responsive pleadings, where he contends that Defendant Parkland was "actively involved" in not giving him the correct amount of medication. (Docket #81, at 8). Later on the same page he states that his affidavits demonstrate Defendant Parkland's involvement, *id.*, but his affidavits only address Defendant Khurana's actions concerning his medical care. (*See* dockets #82, 86). Unsubstantiated allegations are insufficient to meet a non-movant's summary judgment burden. *Little*, 37 F.3d at 1075.

Plaintiff has therefore failed to meet his burden to identify evidence in the record of an official practice or policy to deprive inmates of their constitutional rights. Defendant Parkland therefore cannot be held liable for alleged civil rights violations under 42 U.S.C. § 1983. Accordingly, Defendant Parkland's motion for summary judgment should be **GRANTED** and Plaintiff's claims against it should be **DISMISSED** with **PREJUDICE**.

Since the Court recommends summary judgment in favor of Defendants, their Rule 12(b)(6) motion to dismiss for failure to state a claim should be **DENIED** as **moot**.

## VI. CONCLUSION

For the reasons stated above, the Court recommends that *Defendants' Motion for Summary Judgment* (docket #70) should be **GRANTED**. Plaintiff's claims arising under 42 U.S.C. § 1983 against Defendant Khurana and Defendant Parkland should be **DISMISSED** with **PREJUDICE**. The *Motion of Defendants Kiran Khurana and Parkland Hospital to Dismiss and Brief in Support Thereof* (docket #56) should be **DENIED** as **moot**.

The Court should also **DENY** the following: Plaintiff's motion to quash (docket #65); Plaintiff's *Request for extension of time to answer the defendants* [sic] *motions for summary judgment* (docket #80); and *Plaintiff's Request for Interrogatories* (docket #93). Plaintiff's *Motion for a Hearing* (docket #95) is hereby **DENIED.**

**SO RECOMMENDED** on this 21st day of March, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE